**Robert TENNANT, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 89–14.**

Supreme Court of Wyoming.

Jan. 19, 1990.

Rehearing Denied Jan. 23, 1990.

Wyoming Public Defender Program, Leonard D. Munker, State Public Defender, Mike Cornia, Appellate Counsel, for appellant.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., Mary B. Guthrie, Sr. Asst. Atty. Gen., for appellee.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

THOMAS, Justice.

The significant question to be resolved in this case is whether the trial court erred in excluding from evidence, as hearsay, the testimony of a witness called by the defendant. The appellant, Robert Tennant (Tennant), also asserts, as constituting prejudicial error, other issues relating to the denial of a motion in limine, which Tennant contends chilled his right to defend by inhibiting the exercise of his right to testify; improper questioning of prospective jurors during voir dire; and prosecutorial misconduct in the presentation of closing argument. We are not persuaded, in light of the record and the applicable law, that any reversible error occurred in connection with Tennant's trial, and we affirm the Judgment and Sentence.

In his Brief of Appellant, Tennant sets forth these issues for consideration by the court:

"I. Whether the court erred in ruling that evidence of prior bad acts would be admissable substantively if the appellant testified and such error denied the appellant his right 'to defend in person' as guaranteed by Article 1 § 10 of the Wyoming Constitution.

"II. Whether the trial court erred in excluding the testimony of proposed witness Allen.

"III. Whether statements elicited by the prosecutor caused the jury to believe the trial court would correct any errors in their guilt determination and deprived the appellant of his right to a jury trial.

"IV. Whether the comments made by counsel for the State constituted misconduct and were prejudicial to the defendant."

The State of Wyoming (State), as Appellee, restates the issues in this way:

"I. Whether the trial court properly denied appellant's Motion in Limine concerning the admissibility of appellant's prior convictions.

"II. Whether the trial court should have concluded that the proposed testimony of Geraldine Allen was inadmissible hearsay.

"III. Whether the prosecutor's questions on voir dire constituted error.

"IV. Whether the prosecutor's statements in closing argument were appropriate."

Tennant was charged with, tried for, and convicted of one count of larceny and a second count of larceny by a bailee, each alleged to be a violation of the applicable provisions of § 6-3-402, W.S.1977,[1] and

---

1. Section 6-3-402, W.S.1977, provides, in pertinent part:

"(a) A person who steals, takes and carries, leads or drives away property of another with intent to deprive the owner or lawful possessor is guilty of larceny.

"(b) A bailee, a public servant as defined by W.S. 6-5-101(a)(vi) or any person entrusted

§ 6–3–410, W.S.1977.[2] These charges and convictions are the product of two separate occasions when Tennant obtained the funds of a fellow prisoner in the Natrona County Jail, $1,300 in each instance. The State and Tennant stipulated that the counts should be merged for purposes of sentencing, and the court then imposed a sentence of "not less than twelve months nor more than eighteen months; said sentence * * * [to] run consecutive with the penitentiary sentence handed down in District Court No. 10316." See *Tennant v. State*, 776 P.2d 761 (Wyo.1989). Tennant has taken his appeal from this Judgment and Sentence.

The facts relating to Tennant's convictions are not complicated. In April of 1988, the victim returned to the Natrona County jail from the State Hospital in Evanston where he had been sent for evaluation. Tennant and the victim became cell mates, and the victim, at some point, told Tennant of the difficulty he had encountered at the State Hospital in endeavoring to retrieve funds from his checking account at a bank in Wichita Falls, Texas. The victim had been successful in arranging a wire transfer of funds, but he was denied the freedom to pick up the money from the bank in Evanston. The victim expressed the desire to obtain funds from his bank account so that he would have money for purchasing items from the jail commissary. He could not use a check because of jail policy, and he assumed that he would have the same difficulties with a wire transfer that he had encountered in Evanston.

Tennant offered to assist the victim by having the wire transfer sent to Tennant's mother in Cheyenne. Tennant suggested that the money could be transferred to his mother who then would forward the funds to the victim in the Natrona County jail.

Following this suggestion, the victim arranged to have $1,300 sent to Tennant's mother in Cheyenne. This transfer of funds was accomplished on May 31, 1988. None of the money ever reached the victim, however, and, when he inquired, Tennant explained that his mother was unable to obtain the transferred funds because the victim's bank had made a mistake and put the transfer order in two names, the victim's and Tennant's mother's names. Tennant then suggested that the victim write his bank again requesting the wire transfer of another $1,300, this time only in the name of Tennant's mother. The victim did that, and the second wire transfer of funds was accomplished on June 13, 1988. The victim did not receive any of that money either and, when he was able to telephone his bank, he learned that both fund transfers had been accomplished according to his directions. He then reported the situation to the authorities at the Natrona County jail, and the investigation leading to Tennant's prosecution was instituted.

In the meantime, Tennant's mother, who had never before had so much money, was concerned about the source of the funds represented by the wire transfers. She inquired of Tennant who first told her that the money had been paid for work that he had performed prior to being incarcerated in the Natrona County jail. After Tennant was charged, he telephoned his mother and told her the funds really were the proceeds of a gambling debt that the victim owed to him from a bet relating to some game on television.

The only evidence in the case was presented by the State. After making an offer of proof concerning the proposed testimony of a witness who would have testified about a statement made to her by

---

with the control, care, or custody of any money or other property who, with intent to steal or to deprive the owner of the property, converts the property to his own or another's use is guilty of larceny.
"(c) Except as provided by subsection (e) of this section, larceny is:
"(i) A felony punishable by imprisonment for not more than ten (10) years, a fine of not more than ten thousand dollars ($10,000.00),

or both, if the value of the property is five hundred ($500.00) or more; * * *."

**2.** Section 6–3–410, W.S.1977, provides that:
"The amount of property involved in violations of W.S. 6–3–402 through 6–3–404 and 6–3–406 through 6–3–408 committed pursuant to a common scheme or the same transaction, whether the property is taken from the same person or different persons, may be aggregated in determining the value of the property."

Tennant that he had won the money from the victim in two bets on televised horse races, the defense rested without introducing any evidence. Additional facts relating to the several issues on appeal will be included within the discussion of those issues.

We need not dwell on Tennant's first issue because it is controlled by *Vaupel v. State*, 708 P.2d 1248 (Wyo.1985). Tennant filed a Motion in Limine seeking an order that no witnesses be permitted to testify about his prior criminal record, particularly the conviction upon which he was being held in the Natrona County jail at the time these crimes were committed. When the motion was argued immediately prior to the trial, the State advised the trial court that it would offer evidence of two prior convictions for purposes of impeachment pursuant to Rule 609(a), W.R.E.[3] The State also asserted that the conviction for which Tennant then was being held in the Natrona County jail was admissible, pursuant to Rule 404(b), W.R.E.,[4] as substantive "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." The district judge, in ruling on the motion, said:

"These motions in limine are always difficult because I can't see the full picture, but the Defendant should be aware that my inclination at this moment is that the prior bad acts, the conviction of 1988, can be offered both for impeachment and as an illustration of prior bad acts. The 1984 conviction seems to be unrelated to that. I would permit that to go in for impeachment purposes only."

The initial phrase of the trial court's ruling is almost a paraphrase of language used by the Supreme Court of the United States in *Luce v. United States*, 469 U.S. 38, 41, 105 S.Ct. 460, 463, 83 L.Ed.2d 443 (1984), where the Court said:

"A reviewing court is handicapped in any effort to rule on subtle evidentiary questions outside a factual context." (Footnote omitted.)

*Vaupel*, 708 P.2d 1248, in which this court adopted and relied upon *Luce* in applying Rule 609, W.R.E., sustains the ruling of the trial court on the impeachment aspect of the motion in limine.

"We hold that if an accused does not testify, he does not preserve the issue of the propriety of a ruling on his motion in limine for appeal." *Vaupel*, 708 P.2d at 1250.

Tennant did not testify, and his claim of error with respect to the denial of the motion in limine by the trial court on the use of prior convictions for impeachment is negated by *Vaupel*.

We are satisfied that the principles articulated in *Luce*, and adopted in *Vaupel*, extend to the thrust of the motion in limine with respect to the use of the one prior conviction for the purposes set forth in Rule 404(b). In light of the State's announced position that it would only offer the evidence of the previous crime under Rule 404(b) if Tennant testified, the parameters of the issue are identical. The trial court would need to have before it all the factual circumstances of the case, including the testimony of Tennant, in order to rule on any objection to such evidence.

Furthermore, with respect to evidence offered under Rule 404(b), admissibility does not depend upon the decision of a defendant to testify as does the use of such evidence for impeachment. If such evi-

---

3. Rule 609(a), W.R.E., provides:

"(a) *General rule.*—For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one (1) year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant,

or (2) involved dishonesty or false statement, regardless of the punishment."

4. Rule 404(b), W.R.E., provides:

"(b) *Other crimes, wrongs, or acts.*—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

dence is admissible, then it can be produced as part of the State's case in chief which has no impact, chilling or otherwise, upon the defendant's decision to testify. An announced choice by the State to use such evidence only for rebuttal perhaps affords the defendant an advantage that the law does not demand, but that choice could not be prejudicial to the defendant under the circumstances of this case.

The more significant question in this case, essentially because it presents somewhat novel propositions in Wyoming, is the claim that the trial court erred in excluding certain proffered testimony as hearsay. After the prosecution had rested its case, a hearing was held in chambers to address the motion for judgment of acquittal by the defendant and, at that time, the State moved to exclude as hearsay the testimony of a witness who had been subpoenaed by Tennant. According to the offer of proof, the proposed witness would have testified about a telephone conversation with Tennant during which Tennant had told the witness that he had won the $2,600 in issue through bets on two separate horse races that had been televised.

Tennant's contention at trial was that the proffered evidence constituted an admission against his penal interest even though it tended to be exculpatory. The theory, suggested to the court was that the statement did constitute an admission that he had possession of, and controlled, the funds. Essentially, Tennant was urging to the trial court that the proffered testimony was not hearsay according to the definition found in Rule 801(d)(2), W.R.E., relating to an admission by a party opponent. On this theory, the trial court's ruling clearly was correct because such an admission is admissible as non-hearsay only when "the statement is offered against a party * * *." Rule 801(d)(2).

█ In his appeal, Tennant has shifted his approach and contends that the testimony was admissible even if it is characterized as hearsay. Our consideration of the issue is premised upon our well-established rule that decisions of the trial court with respect to the admissibility of evidence are entitled to considerable deference and, as long as there exists a legitimate basis for the trial court's ruling, that ruling will not be reversed on appeal. *Hopkinson v. State*, 632 P.2d 79 (Wyo.1981), cert. denied 455 U.S. 922, 102 S.Ct. 1280, 71 L.Ed.2d 463 (1982). We also recognize that hearsay evidence, ordinarily inadmissible, may be admitted under an exception to the hearsay rule if the requirements for the particular exception are met. *Crozier v. State*, 723 P.2d 42 (Wyo.1986).

The proffered testimony fits within the definition of hearsay in Rule 801(c), W.R.E., which is:

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

Tennant is the declarant with respect to this statement, and it is hearsay. We already have explained that it is not excluded from the hearsay definition by the provisions of 801(d)(2). Hearsay is not admissible except as otherwise provided. Rule 802, W.R.E.

This brings us to Tennant's new contentions that this testimony was admissible pursuant to hearsay exceptions found in Rules 803(24), W.R.E., and 804(b)(3) and (6), W.R.E. Tennant now also asserts that the testimony would be admissible pursuant to the provisions of Rules 801 and 806, W.R.E. We conclude that none of these suggested exceptions to the hearsay rule are applicable so as to justify a finding of error with respect to the ruling of the trial court excluding the testimony as hearsay. We shall consider each claim separately and briefly.

█ Rule 803(24) is known as the "catch-all" exception to the hearsay rule of inadmissibility. In order to invoke this rule, the court should conclude that the proffered evidence possesses "equivalent circumstantial guarantees of trustworthiness," and "that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence on which the proponent can pro-

cure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence." Rule 803(24). We have held that the purpose of the exceptions to the hearsay rule is to allow trustworthy hearsay evidence to be admitted, but that should happen only when it is both, in fact, worthy of trust and necessary to effectuate justice. *Hopkinson*, 632 P.2d 79. The trustworthiness of a hearsay statement is to be analyzed by evaluating the circumstances in which the declarant made the statement and the incentive he had to speak truthfully or falsely. An analysis of this record discloses that, at the time the district court ruled on the State's objection, it knew that Tennant had made two different statements of explanation to his mother. While one of those was close to the version in the proffered testimony, it was not identical. We could not fault the trial court in refusing to admit this testimony because it does not possess circumstantial guarantees of trustworthiness equivalent to those specifically listed exceptions preceding the exception set forth in Rule 803(24).

■ Tennant also urges that the statement ought to be admitted under the provisions of either Rule 804(b)(3) or (6), which include, in exceptions to the hearsay rule, a statement against the declarant's pecuniary or proprietary interest or one tending to subject him to civil or criminal liability, and a broad other exception, like that found in Rule 803(24), if the declarant is unavailable as a witness. The effort to invoke Rule 804(b)(3) is foreclosed by the last sentence of that rule which states:

> "A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement; * * *."

There is nothing in the offer of proof, or in the record otherwise, that satisfies this requirement of Rule 804(b)(3). We cannot fault the exercise of discretion by the trial judge in excluding the hearsay statement offered under this exception.

Rule 804(b)(6) has substantially the same language as Rule 803(24) and, like that exception, is to be cautiously used and only in exceptional cases when it is necessary in the interests of justice. *Williams v. Collins Communications, Inc.*, 720 P.2d 880 (Wyo.1986). The effort to invoke Rule 804(b)(6) suffers from the same absence of the requisite trustworthiness as was discussed above. Consequently, again, we find no error in the refusal of the district court to admit the proper testimony because of this rule.

The State suggests that no proper showing was made of Tennant's unavailability as a witness, and that obligation is imposed on the proponent of the evidence. *Williams*. We do not invoke that requirement in disposing of this case, however, because of the definition of unavailability found in Rule 804. As the defendant, Tennant had available to him a privilege not to testify concerning the subject matter of this declaration and, consequently, the court could conclude by implication that Tennant was not available as a witness.

Both Rule 803(24) and Rule 804(b)(6) encompass a requirement that the proponent must make known to the adverse party his intention to offer the statement and the particulars of it, including the name and address of the declarant, sufficiently in advance of trial to provide the adverse party an appropriate opportunity to meet it. This record is devoid of any such notice to the State by Tennant, but the record demonstrates rather definitely that the State was aware of the existence of the witness and the nature of the testimony. It had the opportunity to raise the matter before the witness was even called to testify, and the record discloses that the witness had been interviewed by the State. Consequently, we do not rest our disposition of this issue upon the absence of notice, but we do remind practitioners of that requirement.

■ Turning to Rule 801(d)(1), which Tennant attempts to invoke out of context, we note that this rule is directed to the admissibility of prior statements by a witness. Tennant did not take the stand; he was not a witness; and the suggestion that

his prior statements come within the penumbra of Rule 801(d)(1) is not apt. Insofar as the argument rests upon Rule 801(d)(2), that provision in the rules requires that the party's statement be offered against him. It does not serve as a premise for a party to offer the statement for his own benefit.

■ With respect to the contention that Rule 806 has some application to this case, we are satisfied that the sole purpose of that rule is to permit impeachment of a declarant whose out-of-court statement has been admitted into evidence. It also permits cross-examination by a party calling a declarant as a witness after a hearsay statement has been admitted against that party. As we perceive this rule, it is limited in its application and has no prospect for justifying the admissibility *vel non* of the proffered hearsay statement.

Tennant's third and fourth issues share a common denominator. No objection was lodged to the questions asked by the prosecutor on voir dire. Even more interesting, counsel for Tennant pursued much the same line of questioning when pursuing voir dire on Tennant's behalf. The record similarly discloses that no objection was made to the comments of the prosecutor in closing argument. In neither instance did Tennant seek any other relief, such as a motion for a mistrial. Consequently, both of these issues must satisfy the requirements of our plain error doctrine before they can be considered on the merits. It is our conclusion that neither of these contentions can satisfy the requirements of the plain error doctrine.

Our plain error doctrine was announced in *Hampton v. State*, 558 P.2d 504, 507–08 (Wyo.1977), where we said:

> "While this Court has recognized that the plain error concept must be applied to each case on its own particular facts, and any attempt to define the term 'plain error or defects affecting substantial rights' is unlikely to be helpful, still there are some accepted criteria which we invoke when a claim of plain error is presented. When review is sought under the plain error doctrine this Court must

be able to discern from the record, without resort to speculation or equivocal inference, what occurred at trial, that is, we are entitled to know the particular facts. Further, the proponent of plain error must demonstrate the existence of a clear and unequivocal rule of law which the particular facts transgress in a clear and obvious, not merely arguable, way. If these criteria are met, the error or defect must adversely affect some substantial right of the accused in order to avoid the application of the harmless error concept procedurally expressed in Rule 49(a), W.R.Cr.P. The assertion of a constitutional ground of error will not avoid the application of these criteria, and if they are not satisfied any claim for review under the plain error doctrine must fail." (Citations omitted.)

We have consistently followed these criteria. E.g., *McLaughlin v. State*, 780 P.2d 964 (Wyo.1989); *King v. State*, 780 P.2d 943 (Wyo.1989); *Schwenke v. State*, 768 P.2d 1031 (Wyo.1989); *Britt v. State*, 752 P.2d 426 (Wyo.1988); *McDonald v. State*, 715 P.2d 209 (Wyo.1986).

■ Relying upon *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), Tennant contends that the prosecutor's questions on voir dire could have caused the jurors to disregard their duties so as to deny him a fair trial. In *Caldwell*, a death sentence was reversed in the instance of a murder conviction because the prosecutor, in closing argument, told the jury that the sentence to death was subject to review by an appellate court and, for that reason, the jury's decision was not final. This case is distinguishable from *Caldwell* to the end that no clear and unequivocal rule of law was violated.

In this case, the jurors, who had been involved in prior cases in which a directed verdict or a judgment notwithstanding the verdict had occurred, stated that they understood the importance of their role as jurors and that they would not be affected in Tennant's case by their previous experiences. In light of *Caldwell*, counsel for both the State and Tennant obviously felt it was important to make the inquiry. The

prospective jurors were asked only about their prior jury service, and no attempt was made to suggest to them that their decision was of no import or was not final. These questions are well within the range of permissible latitude in interrogating jurors that is controlled by the sound discretion of the trial court. *Gerard v. State*, 511 P.2d 99 (Wyo.1973), cert. denied 414 U.S. 1072, 94 S.Ct. 585, 38 L.Ed.2d 478 (1973). There was no plain error that would justify review of this issue.

In making his argument on his fourth issue, Tennant complains of the closing argument by the prosecutor during which Tennant was referred to as a leech, a blood sucker, and a predator on society. Further, counsel for the State suggested that he might go out and find crippled children to pick on next. Tennant also argues that counsel for the State vouched for the credibility of the victim in this case. In addition, complaint is made of one instance in which the prosecutor suggested that counsel for Tennant and Tennant had a problem with reality. In this latter instance, an objection was lodged, and the trial court admonished counsel about making personal references to opposing counsel.

■ Our rule is that we must examine the entire record to determine whether the conduct asserted as prosecutorial misconduct resulted in substantial prejudice to the defendant amounting to the denial of a fair trial. *Lindsey v. State*, 725 P.2d 649 (Wyo.1986). The burden of establishing prejudice is assigned to the defendant when prosecutorial misconduct is asserted. *Capshaw v. State*, 714 P.2d 349 (Wyo. 1986). While the remarks of the prosecutor were unprofessional, they do not fit within those kinds of statements that this court has considered as prosecutorial misconduct under the plain error doctrine. They do not match the criteria that we discussed in *Schmunk v. State*, 714 P.2d 724 (Wyo.1986), or in *Browder v. State*, 639 P.2d 889 (Wyo.1982), as justifying a consideration of the claim of error under the plain error doctrine. Here, the evidence was overwhelming and, in the absence of any objection by trial counsel, we cannot say

that there was any prejudicial denial of a fair trial. *Coleman v. State*, 741 P.2d 99 (Wyo.1987). In the absence of a clear and unequivocal rule of law controlling the argument that was made, and any clear prejudice to Tennant, there was no plain error for us to review.

The Judgment and Sentence is affirmed.