**Lloyd JAMES, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 93–228.

Supreme Court of Wyoming.

Dec. 29, 1994.

Public Defender Program, Leonard D. Munker, State Public Defender, Deborah Cornia, Appellate Counsel, Cheyenne, Brett Johnson, Student Intern, Laramie, for appellant.

Joseph B. Meyer, Atty. Gen., Sylvia L. Hackl, Deputy Atty. Gen., D. Michael Pauling, Sr. Asst. Atty. Gen., Prosecution Assistance Program, Theodore E. Lauer, Director, Karen Matson, and Elizabeth Chapman, Student Intern, Laramie, for appellee.

Before GOLDEN, C.J., and THOMAS, CARDINE,* MACY,** and TAYLOR, JJ.

GOLDEN, Chief Justice.

Appellant appeals from his conviction on two counts of indecent liberties with a minor, claiming error in the admission of hearsay testimony and uncharged misconduct evidence, and in the exclusion of evidence concerning the victim's sexual history. Appellant also alleges prosecutorial misconduct in the state's opening statement and closing and rebuttal closing arguments.

We affirm.

## ISSUES

Appellant presents the following issues for our review:

I. Did the trial court err in allowing the introduction of evidence concerning prior uncharged bad acts of the appellant?

II. Did the trial court err in granting the state's motion in limine prohibiting evidence of the victim's prior bad acts?

III. Did the trial court err in allowing introduction of hearsay statements made under the excited utterance exception to the hearsay rule?

IV. Was the appellant denied his right to a fair trial when the prosecutor made improper remarks in his closing argument?

The state rephrases the issues as:

I. Did the district court err in allowing the admission of evidence concerning prior uncharged acts of appellant?

II. Did the district court err in granting the state's motion in limine to prohibit evidence of the victim's prior bad acts?

III. Did the district court properly admit hearsay statements under the excited utterance exception to the hearsay rule?

IV. Did remarks made by the state during closing argument deny appellant his right to a fair trial?

## FACTS

Appellant met J.S. in 1989 when she was fifteen years old and appellant was nineteen. For the next four years, appellant and J.S. lived together off and on and had two children together. Appellant and J.S. lived part of their four years together with her family (the S Family), including her younger brother, B.S., who was thirteen years old when appellant moved in with the S Family.

On February 22, 1993, J.S. discovered appellant and her younger brother, B.S., engaged in oral sex in the basement of the house she shared with appellant. On February 26, 1993, the state filed a felony information against appellant charging him with nine counts of indecent liberties with a minor (B.S.) between the dates of September 20, 1992, and February 22, 1993. On April 15, 1993, the state filed its final amended information charging appellant with two counts of indecent liberties with a minor, stemming from sexual acts appellant allegedly committed with B.S. on the dates of February 8, 1993, and February 22, 1993.

* Retired July 6, 1994.

** Chief Justice at time of oral argument.

On May 19, 1993, the state filed a *motion in limine* to exclude evidence of the victim's prior homosexual conduct and his counseling and treatment for that behavior. The trial court granted that motion on June 2, 1993.

Appellant's trial was held June 2–3, 1993. Several witnesses testified, including J.S., who testified that on February 8, 1993, the date of one of the charged counts, she witnessed no sexual conduct but found appellant and the victim in a bedroom together. She also testified that on February 22, 1993, within thirty minutes after discovering appellant and the victim engaged in oral sex, she reported what she had seen to her cousin and to her grandmother. Over defense counsel's objection, the trial court, citing the excited utterance exception to the hearsay rule, permitted both the grandmother and the cousin to testify concerning J.S.'s statements.

Also over defense counsel's objection, the trial court ruled admissible evidence of uncharged sexual acts between appellant and the victim. The victim testified that on as many as ten different occasions, between the dates of February 8, 1993, and February 22, 1993, he engaged in sexual acts with appellant. The victim testified he consented to sex with appellant and at times initiated the encounters.

During his opening statement and closing and rebuttal closing arguments, the prosecutor made several statements which appellant now claims constituted prosecutorial misconduct. We will set forth those statements in our discussion of that issue.

On June 3, 1993, the jury returned its verdict finding appellant guilty of both counts of indecent liberties with a minor. Appellant was sentenced to two concurrent terms in the Wyoming State Penitentiary of not less than four nor more than eight years. This appeal followed.

## DISCUSSION

### 1. *Uncharged Misconduct Evidence*

■ Appellant contends the trial court permitted the introduction of the victim's testimony concerning uncharged acts between appellant and the victim in violation of Wyoming Rules of Evidence 404(b). Rule 404(b) reads:

> *Other crimes, wrongs, or acts.*—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake.

At trial, the prosecution submitted the evidence for the purpose of showing intent, motive, plan, lack of mistake, or "a whole gamut of things." On appeal, the state has modified the proposed purposes to establishing motive and demonstrating course of conduct.

■ On appeal, this court affords great deference to the trial court's determination of admissibility of uncharged misconduct evidence. *Dean v. State*, 865 P.2d 601, 606 (Wyo.1993); *Mitchell v. State*, 865 P.2d 591, 596 (Wyo.1993). As long as a legitimate basis exists for the trial court's ruling, we will not find an abuse of discretion. *Dean*, 865 P.2d at 606; *Mitchell*, 865 P.2d at 596. The trial court's discretion is not without limits, however, and this court has adopted a five-part test governing the admissibility of uncharged misconduct evidence. The factors to consider are:

1. The extent to which the prosecution plainly, clearly, and convincingly can prove the other similar crimes;

2. The remoteness in time of those crimes from the charged offense;

3. The extent to which the evidence of other crimes is introduced for a purpose sanctioned by W.R.E. 404(b);

4. The extent to which the element of the charged offense, that the evidence is introduced to prove, is actually at issue;

5. The extent to which the prosecution has a substantial need for the probative value of the evidence of the other crimes.

*Dean*, 865 P.2d at 606 (citing *Bishop v. State*, 687 P.2d 242, 246 (Wyo.1984), *cert. denied*, 469 U.S. 1219, 105 S.Ct. 1203, 84 L.Ed.2d 345); *see Mitchell*, 865 P.2d at 595. The trial court has broad discretion in balancing these

factors, and each of the five factors need not be satisfied to justify admission of evidence under Rule 404(b). *Dean*, 865 P.2d at 606.

Appellant argues the trial court committed reversible error in admitting the uncharged misconduct evidence because the evidence failed to serve a proper purpose under Rule 404(b), it did not satisfy any of the *Bishop* requirements, and the unfair prejudice of the evidence outweighed its probative value. While we find cause for concern in the handling of the uncharged misconduct evidence—in the prosecution's failure to specify precisely the purpose to be served by the evidence, in the trial court's failure to instruct on the specific purpose for which the jury could consider the evidence and in the state's change of purpose on appeal, we conclude, because the trial took place before this court's decisions in *Dean* and *Mitchell*, the trial court did not abuse its discretion in admitting the evidence.

This court has held that evidence of uncharged misconduct may be admitted under Rule 404(b) to demonstrate course of conduct. *Mitchell*, 865 P.2d at 596; *Brown v. State*, 817 P.2d 429, 433 (Wyo.1991). We have explained that evidence of course of conduct is helpful to clarify what happened between an accused and the victim and is integral to understanding the context of the crime charged. *Brown*, 817 P.2d at 433; *Scadden v. State*, 732 P.2d 1036, 1044 (Wyo. 1987). The evidence of uncharged acts between appellant and the victim served to clarify what happened between the two and thus served a proper 404(b) purpose.

We also find the remaining *Bishop* factors satisfied. Clear and convincing evidence of the uncharged misconduct was provided in the victim's testimony concerning the acts. The credibility of that testimony was for the jury to determine. Additionally, the uncharged acts were not too remote in time from the charged offense. The victim could not provide specific dates but rather a period of time which put the most remote date within five months of the charged acts. We have upheld the admission of uncharged acts as remote as eight to eleven years before the charged acts. *See Britton v. State*, 845 P.2d 1374, 1376 (Wyo.1992). Finally, the evidence was necessary, as we noted earlier, to paint a complete picture of appellant's relationship with the victim and, additionally, to respond to appellant's assertions the victim fabricated the charges against appellant after he rejected the victim's advances.

We are thus satisfied the trial court did not abuse its discretion in finding the evidence admissible under Rule 404(b). We also reject appellant's contention that the trial court permitted excessive detail in the victim's testimony concerning the uncharged acts creating an unfair prejudice that outweighed the probative value of the evidence. The victim's testimony provided the approximate dates of each occurrence and what happened on each of those dates. We find no unnecessary detail and uphold the trial court's exercise of its discretion.

### 2. *Victim's Sexual History*

■ We address next appellant's contention that the trial court's order excluding evidence of the victim's sexual history and any counseling the victim may have received concerning his homosexuality and alleged molestation of children precluded him from presenting his theory of the case. In excluding the evidence, the trial court concluded that the evidence of the victim's prior sexual conduct was irrelevant under WYO.R.EVID. 401.[1] Appellant argues the evidence was relevant to his defense that the victim fabricated the charges against appellant in retaliation for appellant's rejection of the victim's sexual advances toward him and in retaliation for appellant's accusations that the victim had molested appellant's children.

Rulings on the admission of evidence are within the sound discretion of the trial court, and, in the absence of a clear abuse of that discretion, its rulings will not be disturbed on appeal. *Trujillo v. State*, 880 P.2d 575, 580 (Wyo.1994); *Wilson v. State*, 874 P.2d 215, 218 (Wyo.1994). In granting the state's motion to exclude evidence of the victim's prior sexual conduct, the trial court explained that

---

**1.** Both parties discuss the applicability of the rape shield law. We do not address its applica- bility because the trial court did not base its decision on that rule.

it found no connection between the victim's alleged sexual misconduct and his veracity, and no connection between his prior sexual conduct and his motivation to lie. The trial court did, however, permit appellant to present evidence of the victim's sexual advances toward appellant, evidence of the accusations appellant leveled against the victim, and, if he could obtain it, evidence of the victim's retaliatory fabrications against other persons.

We cannot find that the trial court abused its discretion in concluding no relevant link existed between the victim's prior sexual conduct and appellant's theory of the case. Appellant was not precluded from presenting his defense. The victim admitted in his testimony that on a number of occasions he initiated sexual contact with appellant and that appellant rejected some of those advances. Additionally, the trial court permitted appellant to present testimony concerning his accusations against the victim and only stopped the testimony when it became clear the victim never learned of those accusations and thus they could not have formed the basis for the victim's alleged retaliatory charges. Finally, the trial court invited appellant to present evidence that the victim had brought retaliatory charges against other persons under similar circumstances. We find no error in the trial court's order granting the state's *motion in limine*.

3. *Hearsay Statements*

■ Appellant raises as his third contention of error the trial court's admission, under the excited utterance exception to the hearsay rule,[2] the statements of J.S. to her cousin, M.T., and her grandmother, H.S. M.T. testified that she was with J.S. on February 22, 1993, when J.S. discovered appellant and her brother engaged in oral sex. On direct examination by the prosecution, M.T. testified:

Q. Let's go back to the part where [J.S.] comes out of the house, okay? I want you to go into detail and tell me what you

observed when she came out, the mannerisms of [J.S.], that sort of thing. She came out of the house. What happened then?

A. She was emotionally upset and crying.

Q. How upset?

A. Real upset.

Q. How would you describe her being upset on a scale of one to ten? How upset was she?

A. Probably a nine.

Q. Would you describe her mannerisms as what at that point? Was she in control of herself?

A. No.

Q. She was out of control?

A. She didn't know what to do. She was confused.

Q. Would you describe her demeanor as quiet, laid back, excited, hysterical, what? You put some words to it?

A. Hysterical. She couldn't believe what she had seen.

\* \* \* \* \* \*

Q. Did you ask her anything?

A. I didn't have to. She told me.

Q. She just blurted it out.

A. (The witness nodded her head.)

Q. This was immediately after she came out of the house or sometime after she came out?

A. Right after.

Q. A matter of seconds or a matter of—

A. Seconds.

Q. Okay. And she came out, was hysterical, excited, upset. Without any prompting from you she made a statement to you; is that correct?

A. Yes.

Q. What did she say?

[DEFENSE COUNSEL]: Objection. Hearsay.

THE COURT: Overruled, counsel. Go ahead.

Q. What did she say?

---

2. Wyo R.Evid. 803(2) reads:
 The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

(2) *Excited utterance.*—A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

A. She said, "I seen Lloyd giving my brother head." Exact words.

Following earlier testimony that fifteen to twenty minutes passed between the time of J.S.'s observation and her statement to H.S., H.S. testified, in part:

A. She was crying so hard she could hardly tell me what had transpired, and I kept saying, "[J.S.], what is the problem? Tell me." And she says, "oh grandma, I am so upset." And I says, "Why are you upset, [J.S.]?" She says, "Grandma, I don't want to tell you." And I says, "[J.S.], you have to tell me. Tell me what happened."

And she just kept crying and I said, "[J.S.], you have got to calm down and tell me what happened." And she says, "Well, grandma, I went home"—

\* \* \* \* \* \*

A. I said, "[J.S.], please tell me what happened." And she said, "Grandma, I went home and I caught Lloyd and [B.S.] together."

 As we noted earlier, evidentiary rulings are within the sound discretion of the trial court, and those rulings will not be disturbed on appeal absent a clear abuse of that discretion. *Trujillo*, 880 P.2d at 580; *Wilson*, 874 P.2d at 218. This court has specified five factors the trial court should consider in determining whether the excited utterance exception applies. Those five factors are:

1. The nature of the startling event;

2. The declarant's physical manifestation of excitement;

3. The declarant's age;

4. The lapse of time between the event and the hearsay statement; and

5. Whether the statement was made in response to an inquiry.

*Horton v. State*, 764 P.2d 674, 678 (Wyo.1988) (quoting *Clarke v. Vandermeer*, 740 P.2d 921, 927 (Wyo.1987)). We have also pointed out, however, that, while these factors are useful in evaluating the admissibility of proffered evidence, the ultimate inquiry must be whether the "declarant's condition at the time was such that the statement was spontaneous, excited or impulsive rather than the product of reflection and deliberation." *Horton*, 764 P.2d at 678 (quoting *Matter of GP*, 679 P.2d 976, 1003 (Wyo.1984)).

Appellant argues the trial court abused its discretion in permitting the above testimony of M.T. and H.S. because the event was not startling to the declarant, sufficient time had passed between the declarant's observation and her declarations to give her opportunity for reflection, and the declarant's statements to H.S. were made in response to inquiries.

Appellant contends the event did not startle J.S. because she already suspected that her brother and appellant were sexually involved. Appellant cites no authority for his proposition that an anticipated event cannot be a startling event, and we cannot conclude the trial court clearly abused its discretion in ruling that discovering her boyfriend and younger brother engaged in oral sex would be a startling event for the declarant.

Nor can we find a clear abuse of discretion in the trial court's ruling that the statements of J.S. were made within a time period short enough to qualify the statements as excited utterances. This court has held that "[t]he lapse of time between the startling event and the out-of-court statement although relevant is not dispositive in the application of rule 803(2)." *Matter of GP*, 679 P.2d at 1003 (quoting *United States v. Iron Shell*, 633 F.2d 77, 85, 55 A.L.R.Fed. 664 (8th Cir.1980), *cert. denied*, 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203). As we noted earlier, the ultimate inquiry is whether it appears the declarant's condition at the time of the statement was such that the statement was spontaneous, excited or impulsive rather than the product of reflection and deliberation. Ample evidence was presented to support a finding that J.S. was not in a reflective state of mind, but rather was hysterical. Thus, we cannot conclude the trial court's finding that the statements constituted excited utterances despite the fifteen to thirty minutes which lapsed between J.S.'s observation and her statements was clearly erroneous.

Finally, concerning the questioning of a declarant, this court has noted that "[t]he single question 'what happened' has been held not to destroy the excitement necessary

to qualify under this exception to the hearsay rule." *Matter of GP,* 679 P.2d at 1003 (quoting *Iron Shell,* 633 F.2d at 86). We again return to our inquiry whether the declarant's statements were the product of reflection and deliberation or whether they resulted from the stress of the events she witnessed. Based on the evidence of J.S.'s state of mind when she made the statements to H.S., we are satisfied those statements were not the product of H.S.'s questions, and the trial court did not abuse its discretion in admitting her testimony.

### 4. *Prosecutorial Misconduct*

As his last assertion of error, appellant contends the prosecutor made impermissible statements during his opening statement and closing argument, and those improper remarks denied appellant his right to a fair trial. In support of this contention, appellant cites to seven instances in the prosecutor's opening statement, and another four in his closing argument, in which the prosecutor referred to appellant as a predator or a leech. Appellant also cites to the prosecutor's comment in his closing argument that the defendant must convince the jury that the state's witnesses were lying or mistaken. The above comments were all made without objection from the defense.

Also without objection from the defense was the following comment in the prosecutor's rebuttal closing argument:

> She is trying to bring up that it is questionable what happened here. It is not questionable. These cases usually don't involve more than one person's word against the other by the very nature of the act. Here we have a lot of other evidence, overwhelming evidence. Very often I end up without an eye witness to these things. Trust me.

Appellant did object to one statement by the prosecutor in his rebuttal closing argument that the victim was a product of the defendant and the defendant had had four years to make the victim the way he was. The trial court sustained appellant's objection to the comment as a misstatement of the evidence.

Appellant contends the above comments of the prosecutor misstated the facts, appealed to the jurors' fears, sympathies, and prejudices, and shifted the state's burden of proof to the defendant. Since appellant objected to only one of the prosecutor's comments at trial, we must review all but that one comment under a plain error analysis.

■ This court will find plain error when the record clearly shows the incidents alleged as plain error. *Lobatos v. State,* 875 P.2d 716, 721 (Wyo.1994). Appellant must demonstrate the violation of a clear and unequivocal rule of law, that a substantial right has been denied and that appellant was materially prejudiced. *Lobatos,* 875 P.2d at 721. We are reluctant to find plain error in closing arguments and opening statements "lest the trial court becomes required to control argument because opposing counsel does not object." *Taul v. State,* 862 P.2d 649, 659 (Wyo. 1993).

■ In analyzing claims of prosecutorial misconduct, we review the entire context of the prosecutor's statements, as well as the trial testimony and evidence to determine whether the prosecutor's review of the evidence and comments about it were unsubstantiated by the record. *Christian v. State,* 883 P.2d 376, 380 (Wyo.1994); *Taul,* 862 P.2d at 659. Counsel are allowed great latitude in the argument of cases, but statements calculated to inflame, prejudice or mislead are not permitted. *Christian,* 883 P.2d at 380–381; *Taul,* 862 P.2d at 659.

■ This court has previously been presented with remarks similar to those complained of in this case. In *Tennant v. State,* 786 P.2d 339 (Wyo.1990), we considered a prosecutor's reference to a defendant as a leech, bloodsucker and predator on society and the prosecutor's suggestion that perhaps next time the defendant could choose crippled children as his victims. We concluded that, while the prosecutor's remarks were unprofessional, they did not fit within those kinds of statements this court has deemed prosecutorial misconduct under a plain error analysis. *Tennant,* 786 P.2d at 346.

Likewise, we find the prosecutor's statements in this case, that the defendant was a

leech and a predator, unprofessional, but we conclude they do not rise to the level of plain error. Upon review of the record, including testimony that appellant was unable to hold down a job and contributed very little to the household, we can find no violation of a clear and unequivocal rule of law. Additionally, in the face of overwhelming evidence of appellant's guilt, including the victim's testimony and the testimony of an eye witness, we find no prejudice to appellant by the prosecutor's comments.

■ The prosecutor's statement that the defendant must prove the state's witnesses were lying or mistaken was error, but we cannot find it materially prejudiced a substantial right of appellant. As we noted above, the state produced overwhelming evidence of appellant's guilt, and, additionally, the trial court specifically instructed the jury that the state carried the burden of proof and it was the jury's duty to give the benefit of the doubt to the defendant on any single essential fact or necessary element. We therefore find no plain error in the statement.

■ We also reject appellant's contention that the prosecutor improperly suggested the jury should trust his assertion that the eyewitness made the state's case overwhelming. Taken in context, we believe the prosecutor was telling the jury to trust him when he said he usually does not have an eyewitness in these types of cases. We find no violation of a clear and unequivocal rule of law.

■ Finally, while we agree the comment was improper as a misstatement of the facts, we find no prejudice in the prosecutor's statement that appellant had spent four years corrupting the victim. The trial court sustained appellant's objection to the comment and immediately declared it a misstatement of the facts. Finding no prejudice in the statement, we find no reversible error. *See Tennant*, 786 P.2d at 346.

## CONCLUSION

The judgment and sentence of the trial court is affirmed.

CARDINE, Justice, Retired, dissenting.

This is a case in which the State knowingly made false representations of fact in argument to the jury which were of such import as would assuredly affect the final verdict. The problem is that this kind of transgression occurs too often in the prosecution of these cases. For the court to continue to affirm is to condone—even encourage—the practice. I would reverse and remand for a new trial. Therefore, I dissent.

James' defense was that the victim had made up the allegations which were the basis for prosecution to retaliate against James for refusing the victim's sexual advances. In order to show motive to fabricate, James sought to introduce evidence of the victim's prior sexual history and conduct, his reputation and that he had undergone counseling and treatment for deviant sexual conduct. The State presented a motion in limine to prohibit the introduction of this evidence and evidence that the alleged victim was a practicing homosexual long before he ever met this defendant. The trial court granted the State's motion in limine prohibiting James from introducing any of the victim's homosexuality, carefully keeping such evidence from the jury, "directly or indirectly."

Having been denied presentation of his theory of the case, the trial proceeded. With the testimony concluded, the parties having rested their case, and jury having been instructed on the law, final arguments were presented. It was in rebuttal then that the prosecution, knowing of the victim's prior homosexual history and activity, and having obtained exclusion of it by limine motion, stated to the jury that the victim was a homosexual because the defendant had had four years to make the victim that way. Thus, the prosecutor stated to the jury:

Don't forget one thing, that young man is the product of this man sitting right over here. He is that way because this man made him that way, and he has four years to do it, four years.

[Defense attorney]: Objection, your Honor. That is misstating the evidence.

THE COURT: There is no evidence of that, counsel.

[Prosecutor]: I get a little carried away. Excuse me.

The court deals here not with plain error, but with a proper objection which was sustained as a misstatement of the evidence. First, the comment was not a misstatement of the evidence; it was a false statement, and the jury should have been informed of the falsity, counsel reprimanded before the jury, the jury informed of the true facts or, in the alternative, a mistrial declared.

Somewhere, sometime, someplace, this type of practice must stop. It will not stop as long as it is permitted. As we have often stated:

> It must be kept in mind that the prosecuting attorney is a representative of the State whose obligation is to govern impartially, whose aim is not that it win a case but that justice be done. It is his mission that guilt shall not escape or innocence suffer. He is duty bound to prosecute with earnestness and vigor. While he may strike hard blows, he is not free to strike foul ones.

*Hopkinson v. State,* 632 P.2d 79, 166 (Wyo. 1981); see also *Singer v. United States,* 380 U.S. 24, 37, 85 S.Ct. 783, 791, 13 L.Ed.2d 630 (1965); *Berger v. United States,* 295 U.S. 78, 87, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935).

There is a second reason for reversal of this case. The evidence of the victim's past sexual history and conduct should have been admitted because: (1) it was not within the purview of the rape shield statute, W.S. 6–2–312 (1988); (2) it was relevant and material to the defense; and (3) it was admissible under W.R.E. 404 and 608.

Wyoming's rape shield statute provides: **Evidence of victim's prior sexual conduct or reputation; procedure for introduction.**

(a) *In any prosecution under W.S. 6–2–302 through 6–2–305 or for any lesser included offense,* if evidence of the prior sexual conduct of the victim, reputation evidence or opinion evidence as to the character of the victim is to be offered the following procedure shall be used:

(i) A written motion shall be made by the defendant to the court at least ten (10) days prior to the trial stating that the defense has an offer of proof of the relevancy of evidence of the sexual conduct of the victim and its relevancy to the defense;

(ii) The written motion shall be accompanied by affidavits in which the offer of proof is stated;

(iii) If the court finds the offer of proof sufficient, the court shall order a hearing in chambers, and at the hearing allow the questioning of the victim regarding the offer of proof made by the defendant and other pertinent evidence;

(iv) At the conclusion of the hearing, if the court finds that the probative value of the evidence substantially outweighs the probability that its admission will create prejudice, the evidence shall be admissible pursuant to this section. The court may make an order stating what evidence may be introduced by the defendant, which order may include the nature of the questions to be permitted.

(b) This section does not limit the introduction of evidence as to prior sexual conduct of the victim with the actor.

(c) Any motion or affidavit submitted pursuant to this section is privileged information and shall not be released or made available for public use or scrutiny in any manner, including posttrial proceedings.

W.S. 6–2–312 (1988) (emphasis added). The rape shield statute, by its terms, applies to the crimes enumerated at W.S. 6–2–302 (first degree sexual assault), W.S. 6–2–303 (second degree sexual assault), W.S. 6–2–304 (third degree sexual assault), W.S. 6–2–305 (fourth degree sexual assault) and any crime that is a lesser included of those.

James was charged and convicted on two counts of immoral or indecent acts, W.S. 14–3–105 (1994). That crime is not one of the four specifically listed in the rape shield statute; therefore, in order for the rape shield statute to be applicable, 14–3–105 must be a lesser included of one of the four degrees of sexual assault. It is not. *See Rivera v. State,* 840 P.2d 933 (Wyo.1992) (first degree sexual assault); *Derksen v. State,* 845 P.2d 1383 (Wyo.1993) (second degree sexual as-

sault); *McArtor v. State,* 699 P.2d 288 (Wyo. 1985) (third degree sexual assault); *Griego v. State,* 761 P.2d 973 (Wyo.1988) (fourth degree sexual assault). The rape shield statute is inapplicable to prosecutions for immoral or indecent acts.

Granted, James' theory of the defense seems particularly weak, especially given the testimony provided by his girlfriend. However, a defendant has the right to present a defense along with supporting witnesses and evidence. United States Constitution, Amend. VI; Wyoming Constitution, Art. 1 § 10; *Faretta v. California,* 422 U.S. 806, 819, 95 S.Ct. 2525, 2533, 45 L.Ed.2d 562 (1975). The trial court's ruling effectively eviscerated James' defense.

I dissent and would reverse and remand for new trial.