Carlos H. DELACRUZ, Appellant
(Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 99–274.

Supreme Court of Wyoming.

Sept. 1, 2000.

Representing Appellant: Sylvia Lee Hackl, State Public Defender; Donna D. Domonkos, Appellate Counsel; Ryan R. Roden, Assistant Appellate Counsel.

Representing Appellee: Gay Woodhouse, Wyoming Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Theodore E. Lauer, Faculty Director, and Dennis E. Ellis, Student Intern, of the Prosecution Assistance Program.

Before LEHMAN, C.J., and THOMAS, GOLDEN, HILL, and KITE, JJ.

GOLDEN, Justice.

In this appeal, the Appellant, Carlos H. Delacruz, who was convicted by a jury of possession of more than three grams of methamphetamine on October 23, 1998, in violation of Wyo. Stat. Ann. § 35–7–1031(c)(ii) (1998 Cum.Supp.), and delivery of methamphetamine on June 3, 1998, in violation of Wyo. Stat. Ann. § 35–7–1031(a)(ii) (Michie 1997), asserts that plain error occurred when the prosecutor in closing argument allegedly vouched for the credibility and truthfulness of the prosecution's main witness, a confidential informant, who testified about the June 3, 1998, event. Delacruz points specifically to the following instances:

1. As you, I'm sure, are aware, the state doesn't choose the witnesses. Those people who know the defendant and are around the defendant are the ones that the state must rely upon to prove their case. This includes the Raelene Hamptons and the Ronda Cards of this world. We take them as they are. We must accept them as witnesses even if they've been involved with methamphetamine. We must accept them as witnesses because they are the people who know what happened. They are the people who know the truth.

2. When you cast a play in hell, you don't get angels as actors. And that's what the state dealt with in this case.

3. Ms. Hampton took the – the witness stand. I submit to you that she was both credible and believable, not your typical drug user.

4. More than that is the question of what makes sense, the question of credibility, the question of why the state's witnesses would lie about what happened. Your common sense will tell you that, with respect to these charges and leading up to the offenses, they have no reason to come into this courtroom and orchestrate a lie.

Delacruz contends that these remarks were "not just 'inartful' statements," but rather "[t]he prosecution essentially was saying to the jury, I believe Ms. Hampton even though she has all of these flaws and there are these doubts, so you the jury should also believe her and ignore all of her flaws and any doubt as to her credibility and truthfulness."

 Having reviewed Delacruz's assertion by the application of the standard of plain error,[1] in light of our cases addressing claims of prosecutorial misconduct in closing argument,[2] we hold that the prosecutor's remarks do not qualify as vouching for the credibility of the government's witness. Finding no violation of a clear and unequivocal rule of law, we affirm Delacruz's convictions.

 Delacruz and the State agree that "[i]t is improper for the prosecuting attorney, even in responding to defense arguments, to personally vouch for the credibility of the State's witnesses." *Harper v. State*, 970 P.2d 400, 403 (Wyo.1998) (citations omitted). About the first two statements of which Delacruz complains, we agree with the State's view that they simply express recognition that, as the evidence revealed, in a drug prosecution the government's witnesses usually are those persons who associate with the accused and who have substance abuse problems; these persons know what happened and what the truth is because, as the evidence revealed, they were eyewitnesses to the very criminal activity with which the accused is charged. About the third statement, Delacruz has failed to recite the more complete passage from which the isolated remark is plucked. Immediately following the isolated remark, the prosecutor explained the evidence from which the jury could draw

---

1. "The plain error analysis that must be pursued in the absence of objection requires the party claiming error to demonstrate the violation of a clear and unequivocal rule of law, clearly reflected in the record, and resulting in the abridgment of a substantial right of the party to his material prejudice." *Harper*, 970 P.2d 400, 403 (Wyo.1998).

2. "Plain error in closing argument must remain hard to find because otherwise the trial court becomes charged with an adversary responsibility to control argument even when objection is not taken by the opposing attorney." *Dice v. State*, 825 P.2d 379, 385 (Wyo.1992).

the proper inference that Ms. Hampton was both credible and believable:

> Ms. Hampton took the – the witness stand. I submit to you that she was both credible and believable, not your typical drug user. I say that because she had an interesting background. She had an impressive educational background and an extensive work history, which included law enforcement. But she had a lot of things go wrong in her life. She doesn't make any excuses. She doesn't blame anyone. She just sat up on that witness stand and told you exactly what she had done.

> She had four family members die in approximately a year's time. She was depressed, and then she made a real serious attempt to kill herself. The wheels truly had fallen off for Ms. Hampton. After the suicide attempt, she tells you that she turned to methamphetamine in a significant way. She told you why she turned to methamphetamine. She had learned about it. She was depressed. After the suicide, she had 30 days to give herself some way to get herself back on her feet. Should she have done this? Of course not. Was it illegal? You bet it was. But she did.

> She wants out. She's getting pressure from those in the drug world. It was difficult for her to get out. She didn't want to live that way anymore. She wanted to be accepted by her family again. She knew she couldn't go cold turkey, so she began to drink alcohol. And then the DUI came.

> She then contacted—as believable as it may be, she contacted Agent Graham and wanted to assist. She had trained with him. And because she had done so much wrong, she now wanted to do so much right. And even after Agent Graham said, "Go to treatment, we'll see what happens," she still came back from treatment and wanted to rid the area of methamphetamine users and sever her ties to those people that she had significantly been associating with in the drug world. And that's what she did.

In our judgment, the prosecuting attorney was properly offering the jury a way of viewing the significance of the evidence heard by the jury. To be sure, the record reveals that Ms. Hampton's testimony was just as the prosecuting attorney summarized it for the jury in the passage just quoted. That is the purpose of closing argument. *Harper*, 970 P.2d at 403.

 About the last statement, we agree with the State that the prosecuting attorney is simply asking the jury to apply common sense to the evidence it had heard. Immediately before this particular passage, the prosecuting attorney had reminded the jury that the evidence revealed that Ms. Hampton was working with law enforcement with her goal being to get drugs from Delacruz and she had no interests other than that. The prosecuting attorney's remarks were proper.

We affirm the judgment and sentence entered against Delacruz.