2005 WY 162

**Brian Keith FARMER, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 04–188.

Supreme Court of Wyoming.

Dec. 21, 2005.

700

III. Whether prosecutorial misconduct deprived [Mr. Farmer] of his constitutional right to a fair trial?

Representing Appellant: Ken Koski, State Public Defender; Donna D. Domonkos, Appellate Counsel; Tina N. Kerin, Senior Assistant Appellate Counsel; Tonya A. Morse.

Representing Appellee: Patrick J. Crank, Attorney General; Paul Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; James Michael Causey, Assistant Attorney General.

Before HILL, C.J., and GOLDEN, KITE, VOIGT, and BURKE, JJ.

BURKE, Justice.

[¶ 1] Brian K. Farmer appeals his conviction for aggravated assault. Mr. Farmer contends the district court erred in determining that a witness was unavailable and allowing the prior testimony of that witness into evidence. Mr. Farmer also claims that the district court failed to properly instruct the jury and that he was prejudiced by prosecutorial misconduct during closing arguments. We affirm.

## ISSUES

[¶ 2] Mr. Farmer presents the following issues on appeal:

I. Whether the trial court erred in admitting the prior testimony of a witness, John Biddix, because

A. The witness was not legally unavailable, or

B. [Mr. Farmer] was denied his rights under the confrontation clause due to ineffective assistance of counsel in the first trial?

II. Whether the trial court erred in denying that certain jury instructions be given?

## FACTS

[¶ 3] The criminal charges brought against Mr. Farmer arose from an incident which culminated in the stabbing of Joshua Goodhue. At the time of the incident, Mr. Goodhue and Mr. Farmer were neighbors in a mobile home park. They lived across the street from one another. According to Mr. Farmer, he was asleep in his home when he was awakened by loud noises which he thought were beer bottles hitting his trailer. He went outside to investigate. Initially, he thought the commotion was caused by the occupant of a vehicle which he observed in the neighborhood. He yelled at the occupant in the car. When the car left, he focused his attention on Mr. Goodhue's residence. Several individuals were present at the Goodhue home. They heard Mr. Farmer yelling. They approached the fence bordering Mr. Farmer's property. Words were exchanged and the altercation escalated.

[¶ 4] According to the State, after the initial verbal confrontation, Mr. Farmer jumped the fence and attacked Jack Biddix. John Biddix then entered the fray in an attempt to help his brother. After a brief scuffle, Mr. Farmer retreated to his home. The others returned to the Goodhue property. Several remained outside. A short time later, Mr. Farmer reemerged from his residence. He jumped over his fence, crossed the road, entered Mr. Goodhue's property and stabbed Mr. Goodhue in the chest. Mr. Farmer left the property and returned to his home.

[¶ 5] Mr. Farmer did not dispute that he stabbed Mr. Goodhue. He did, however, provide a different version of the incident. According to Mr. Farmer, Mr. Goodhue and his companions initiated the confrontation. They threw bottles at him. They pulled him over his fence. He sought refuge under a car parked on the street in an effort to protect himself. When he saw his opportunity to escape, he took it. While climbing out from under the car he was confronted by Mr. Goodhue and he stabbed him in self-defense.

[¶ 6] Mr. Farmer was charged with aggravated assault. He was tried twice. He was found guilty of aggravated assault at his first trial. He appealed. While his appeal was pending, the parties stipulated that Mr. Farmer was entitled to a new trial because he had not been represented by counsel at his preliminary hearing. The case was remanded and a second preliminary hearing was held. Mr. Farmer was bound over for trial and a second jury trial was scheduled to begin November 3, 2003.

[¶ 7] John Biddix, one of the participants in the altercation, testified at Mr. Farmer's first trial. Shortly before the second trial, the State advised that it could not locate Mr. Biddix and intended to present his prior trial testimony as evidence in the second trial. Mr. Farmer objected on the basis that the State had failed to establish that Mr. Biddix was unavailable and that he had not been effectively cross examined during the first trial. A hearing was held during which the State presented evidence regarding its efforts to locate Mr. Biddix. The district court concluded that the prior testimony was admissible because Mr. Biddix was unavailable and Mr. Farmer had adequate opportunity to cross examine him during the first trial. The second jury trial was held and Mr. Farmer was found guilty of aggravated assault. The judgment and sentence of the district court was entered on May 28, 2004. This appeal followed.

## DISCUSSION

### A. Admissibility of Prior Testimony

■■■■ [¶ 8] We review issues concerning the admissibility of evidence as follows:

Evidentiary rulings are within the sound discretion of the trial court.... This Court will generally accede to the trial court's determination of the admissibility of evidence unless that court clearly abused its discretion. We have described the standard of an abuse of discretion as reaching the question of the reasonableness of the trial court's choice. Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria. It also means exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. In the absence of an abuse of discretion, we will not disturb the trial court's determination. The burden is on the defendant to establish such abuse.

*Holloman v. State,* 2005 WY 25, ¶ 10, 106 P.3d 879, 883 (Wyo.2005).

■■■■ [¶ 9] Mr. Farmer claims the district court abused its discretion by admitting the prior testimony of John Biddix. Prior testimony of a witness may be properly admitted if: (1) the witness is unavailable; (2) the former testimony was given by the witness while he was testifying under oath; and (3) the party against whom the testimony is offered had the opportunity and a similar motive to develop the testimony by direct, cross, or redirect examination at the time of the former testimony. W.R.E. 804(b)(1); [1] *Grable v. State,* 649 P.2d 663, 671 (Wyo.1982); *Rodriguez v. State,* 711 P.2d 410, 413 (Wyo. 1985). *See also Crawford v. Washington,* 541 U.S. 36, 68–69, 124 S.Ct. 1354, 1374, 158 L.Ed.2d 177 (2004) and *Vigil v. State,* 2004 WY 110, ¶ 18, 98 P.3d 172, 177–79 (Wyo.2004) (recognizing that a defendant's constitutional right to confront a witness is not violated when the witness is unavailable and the defendant has had prior opportunity to cross examine the witness). Mr. Farmer does not dispute that Mr. Biddix testified as a witness under oath at his first trial. He claims the district court erred in admitting the testimony because the State failed to prove that Mr. Biddix was unavailable. He also asserts that he was denied an adequate opportunity to cross examine Mr. Biddix due to ineffective assistance of counsel in the prior trial.

---

1. W.R.E. 804(b)(1) states:

*Hearsay exceptions.*—The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

(1) Former Testimony.—Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination[.]

[¶ 10] A witness is unavailable if he "[i]s absent from the hearing and the proponent of his statement has been unable to procure his attendance by process or other reasonable means." W.R.E. 804(a)(5). The burden of proof is on the prosecution to establish that the witness is unavailable to testify at trial despite its good faith efforts to obtain his presence. *Grable,* 649 P.2d at 672. Mr. Farmer contends the State failed to establish that it used reasonable efforts to locate Mr. Biddix.

[¶ 11] After reviewing the evidence presented by the State, the court determined that Mr. Biddix was unavailable. The court explained:

In this case, and beginning in October, efforts were undertaken by the District Attorney[']s Office through Ms. Lynch to attempt to locate Mr. John Biddix. And she's testified as to those efforts that were made.

It is obvious from the testimony that Mr. Biddix is not in Natrona County or in the immediate area; those efforts were exhausted.

To suggest that she would be required to go to the Child Support Enforcement Division when a bench warrant was issued for Mr. Biddix and still active would be futile. I mean, if they knew where he was, he wouldn't have a bench warrant; he would have been arrested or appeared.

In addition, going to Montana or further researching Montana, when Montana has an active NCIC warrant, would also be futile. Because if it was known where he existed in Montana or any information there, there wouldn't be an active NCIC warrant in Montana [for] extradition.

But most importantly, here is a brother who's told Ms. Lynch that he is somewhere in Florida. He does not know where. He has absconded or conceal[ed] himself because of the existing warrants. And, obviously, there's nothing to indicate that Florida authorities had had any contact or interaction with him based upon the NCIC information. And, also, I believe there's a CAD information, as well.

So, the best we know is, he's somewhere in Florida. Efforts have been made, before talking to his brother, to locate his brother which was some difficulty [sic].

But the question is: Were the efforts reasonable in light of the information and in light of the various warrants that clearly indicate, at least since November, that—I think the testimony is that in November of 2002 Mr. Biddix [had] apparently left the state.

Given the fact that there are the existing warrants from Natrona, Mills, or the City of Casper, and the activity from Montana and the absence, after talking with various officers and individuals in Natrona County, he cannot be located.

Reasonable efforts were made to locate him elsewhere. And there's no information to indicate where he is. So I believe based upon the testimony and based upon the case law, that reasonable efforts were made to locate Mr. Biddix and to obtain his presence in this case.

While, [defense counsel], there may be a number of things you would suggest could have been done, the [question] is: Were the efforts taken reasonable in the light of the facts and circumstances as articulated by the Court. And I find that they were reasonable.

And that pursuant to Wyoming case law and the Rules of [Evidence] 804(b)(1), Mr. John Biddix is an unavailable witness.

Our review of the record supports the factual findings of the district court.

[¶ 12] Janeice Lynch, the Victim Witness Director for the prosecutor's office, testified regarding her efforts to locate Mr. Biddix. Ms. Lynch initiated her efforts to serve subpoenas on prospective witnesses in mid October. In the course of performing her duties, she was told by several individuals that Mr. Biddix had left town. She checked with local law enforcement but received no helpful information regarding the current whereabouts of Mr. Biddix. She located Jack Biddix, who informed her that his brother, John, had left Casper in November 2002 and was in Florida. He did not provide a specific address or identify the city in which his brother was living. He told Ms. Lynch that his brother would not return to Wyoming because of

active arrest warrants that were pending against him. Evidence was also introduced establishing the existence of several active warrants against Mr. Biddix from Wyoming and one from Montana. The warrants were issued in 2002 and 2003. One of the warrants related to the failure of Mr. Biddix to appear for an extradition hearing on the Montana charges.

[¶ 13] Mr. Farmer contends that the efforts of the State to locate Mr. Biddix were insufficient. He faults the State for failing to contact the local child support enforcement office and law enforcement in Montana and Florida. He also suggests that additional inquiry should have been made with other relatives of Mr. Biddix.

[¶ 14] The determination of whether a witness is unavailable is vested in the sound discretion of the trial court and we will not overturn its determination absent a showing of an abuse of discretion. *Grable*, 649 P.2d at 672. "[T]he lengths to which the prosecution is required to proceed … is a question of reasonableness." *Id.* The prosecution is not required to engage in futile acts to procure a witness. *Id.* The evidence established that Mr. Biddix had been absent from Wyoming for approximately one year. The existence of active arrest warrants helped explain his absence and the difficulty in obtaining a current address for Mr. Biddix. The district court could properly conclude that the State acted reasonably in its efforts to locate Mr. Biddix. We find no abuse of discretion in the district court's determination that Mr. Biddix was unavailable to testify at Mr. Farmer's second trial.

[¶ 15] Next, Mr. Farmer contends that he was denied an adequate opportunity to develop Mr. Biddix's testimony at the first trial. He acknowledges that he was represented by counsel who questioned Mr. Biddix. However, Mr. Farmer claims that the cross examination was inadequate. In support of his position, he points to the relatively few questions asked of Mr. Biddix by defense counsel. He also questions other aspects of defense counsel's performance in the first trial in an effort to bolster his claim. Mr. Farmer's complaints concerning defense

counsel's performance at the first trial do not establish ineffective assistance of counsel.

Whether to cross-examine and the extent of cross-examination are strategic decisions. The risk of excessive cross-examination is that the witness may reconcile inconsistencies, additional unfavorable testimony may be elicited, and ineffective efforts to attack credibility may in fact enhance the witness's testimony. *Smith v. State*, 959 P.2d 1193, 1198 (Wyo.1998). Speculation as to how the cross-examination could have been conducted differently does not meet the *Strickland* test for ineffective assistance.

*Barkell v. State*, 2002 WY 153, ¶ 23, 55 P.3d 1239, 1244 (Wyo.2002).

[¶ 16] Under the federal constitution, we need only be satisfied that Mr. Farmer had an opportunity for cross examination. *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 294, 88 L.Ed.2d 15 (1985). "[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Id.* (Emphasis in original.) *See also Pennsylvania v. Ritchie*, 480 U.S. 39, 53, 107 S.Ct. 989, 999, 94 L.Ed.2d 40 (1987) (holding that the Confrontation Clause is satisfied so long as the defense is given "wide latitude" to confront witnesses, and that inquiry into counsel's effectiveness in cross-examination is not required); *Ohio v. Roberts*, 448 U.S. 56, 73, 100 S.Ct. 2531, 2543, 65 L.Ed.2d 597 (1980) (holding that no inquiry into "effectiveness" is required).

[¶ 17] We have previously applied a four-part test to determine whether prior testimony is admissible without offending the defendant's right of confrontation. Prior testimony is admissible

when the prior testimony was given under oath, when it was given while the defendant was represented by counsel, when the defendant's counsel could and did cross-examine the witness, and when cross-examination which would be conducted at trial would not touch upon any new and significantly material line of inquiry.

*Rodriguez*, 711 P.2d at 415.

[¶ 18] It is undisputed that the first three elements of the test were met. Mr. Farmer

claims, however, that the absence of Mr. Biddix from trial deprived him of the opportunity to pursue a "new and significantly material line of inquiry." Mr. Farmer alleges that he was prevented from exploring inconsistencies in the testimony of John and Jack Biddix.[2] We are satisfied that such examination does not constitute a new material line of inquiry. Mr. Farmer was presented with an adequate opportunity to explore John Biddix's recollection of events during the first trial. He was able to comment upon the discrepancies in testimony of the Biddix brothers in closing argument at the second trial. We find that the prior testimony of John Biddix meets our four-part test and find no abuse of discretion in the district court's evidentiary ruling that such testimony was admissible.

### B. Proposed Jury Instructions

[¶ 19] Mr. Farmer also challenges the district court's rejection of three of his proposed jury instructions. Specifically, Mr. Farmer claims the district court's refusal to give his proposed jury instructions V, Q and R constituted fundamental error requiring reversal. We disagree.

[¶ 20] When reviewing questions involving jury instructions, we afford the trial court significant deference. *Lapp v. State*, 2004 WY 142, ¶ 7, 100 P.3d 862, 864–65 (Wyo.2004). Jury "[i]nstructions must be considered as a whole, and individual instructions, or parts of them, should not be singled out and considered in isolation." *Giles v. State*, 2004 WY 101, ¶ 14, 96 P.3d 1027, 1031 (Wyo.2004). We confine our review to a "search for prejudicial error." *McWilliams v. Wilhelm*, 893 P.2d 1147, 1148 (Wyo.1995). "[A]s long as the instructions correctly state the law and the entire charge covers the relevant issue, reversible error will not be found." *Giles*, ¶ 14.

[¶ 21] Proposed jury instruction V concerns the elements of aggravated assault and states:

2. The inconsistencies related to the initial contact between Mr. Farmer and Jack Biddix and the length of time which elapsed between Mr. Farmer's escape and his return to stab Mr. Goo-

The elements of the crime of Aggravated Assault and Battery, as charged in this case, are:

1. On or about the 4th day of July, 2001
2. In the County of Natrona, and State of Wyoming
3. The Defendant, Brian K. Farmer
4. Intentionally caused
5. Bodily injury to another person, Josh Goodhue
6. With a deadly weapon
7. And the Defendant, Brian K. Farmer, did not act in self-defense.

If you find from your consideration of all the evidence that each of these elements has been proved beyond a reasonable doubt, then you should find the Defendant guilty.

If, on the other hand, you find from your consideration of all of the evidence that any of these elements has not been proved beyond a reasonable doubt, then you should find the Defendant not guilty.

While we agree with Mr. Farmer that this proposed instruction covers the elements of aggravated assault and is a correct statement of law, we have previously held that a district court may "properly refuse a requested instruction, even if correct, where other instructions have sufficiently covered the principles of the requested instruction." *Witt v. State*, 892 P.2d 132, 142 (Wyo.1995). In this case, the district court gave Instruction No. 11 which states:

The elements of the crime of Aggravated Assault and Battery, as charged in this case, are:

1. On or about the 4th day of July, 2001
2. In the County of Natrona, and State of Wyoming
3. The Defendant, Brian K. Farmer
4. Intentionally caused
5. Bodily injury to another person, Josh Goodhue
6. With a deadly weapon

dhue. John Biddix testified that ten minutes elapsed. Jack Biddix testified that only a minute or two elapsed.

7. And the Defendant did not act in self-defense.

If you find from your consideration of all the evidence that each of these elements has been proved beyond a reasonable doubt, then you should find the Defendant guilty.

If, on the other hand, you find from your consideration of all of the evidence that any of these elements has not been proved beyond a reasonable doubt, then you should find the Defendant not guilty.

The only discernible difference between Mr. Farmer's proposed instruction and Instruction 11 is that Mr. Farmer's name does not appear twice in the given instruction. The elements of aggravated assault are the same in both instructions as is the burden of proof required. We find no error in the district court's failure to give this instruction.

▆▆▆ [¶ 22] Mr. Farmer also claims error concerning his proposed instructions Q and R. Mr. Farmer contends that his theory of the case centered on self-defense, the defense of others and the protection of his home and habitation. At trial, Mr. Farmer claimed that his fiancé was inside his trailer and he was trying to protect her throughout the incident. Mr. Farmer also claimed that he was protecting his home. His proposed Instructions Q and R state:

[Proposed Instruction Q]

A person may defend his home or habitation against anyone who manifestly intends or endeavors in a violent or riotous manner, to enter that home or habitation and who appears to intend violence to any person in that home or habitation. The amount of force which the person may use in resisting such trespass is limited by what would appear to a reasonable person, in the same or similar circumstances, necessary to resist the violent or unlawful entry. A person is not bound to retreat even though a retreat might safely be made. A person may resist force with force, increasing it in proportion to the intruder's persistence and violence if the circumstances apparent to him are such as would excite similar fears and a similar belief in a reasonable person. If the person kills under the influence of such fear, the homicide is not a felonious homicide but is justified.

[Proposed Instruction R]

If the defendant at his place of residence had reasonable ground[s] to believe and actually did believe that he was in imminent danger of death or serious bodily harm and that the use of deadly force was necessary to repel such danger, he was not required to retreat or to consider whether he could safely retreat. The defendant was entitled to stand his ground and use such force as was reasonably necessary under the circumstances to save his life or protect himself or others from serious bodily harm.

Mr. Farmer claims the district court erred by failing to give these proposed instructions because they support his theory of the case.

▆▆▆ [¶ 23] We have previously recognized that "a defendant has the right to have instructions on his theory of the case or his theory of defense presented to the jury if the instructions sufficiently inform the jury of the theory or defense and if competent evidence exists which supports the law expressed in the instructions." *Thom v. State*, 792 P.2d 192, 195 (Wyo.1990). However, we have also noted that "[n]ot every instruction must be given simply because there is a claim that it incorporates a theory of the case." *Wilkening v. State*, 922 P.2d 1381, 1383 (Wyo.1996). A trial court may properly refuse to give a proposed instruction if it is erroneous, confusing, argumentative, or if the instruction unduly emphasizes one aspect of the case, the law, or the defendant's version of the events. *Madrid v. State*, 910 P.2d 1340, 1346 (Wyo.1996); *Jansen v. State*, 892 P.2d 1131, 1140 (Wyo.1995); *Virgilio v. State*, 834 P.2d 1125, 1128 (Wyo.1992). Additionally, "instructions not based on the evidence can be properly refused." *Chavez–Becerra v. State*, 924 P.2d 63, 67 (Wyo.1996).

▆▆▆ [¶ 24] Despite Mr. Farmer's contentions that he was defending his property, no evidence was adduced at trial indicating the victim or his friends ever entered Mr. Farmer's property or attempted to enter his

trailer. In this regard, the trial court determined:

> With the state of the evidence at this point in time, I don't see any evidence that would support a reasonable factual basis for giving Instruction Q, which is pattern 8.06 and deals with a defense of home or habitation against anyone who manifestly intends or endeavors in a [riotous manner] to enter that home or habitation.
>
> In this case, the only evidence that the Court has heard is that these individuals, viewing in the light most favorable to Mr. Farmer, grabbed him over the fence and pulled him over the fence. And he then crawled under the car and was observing those people while he was under the car. And he noted that he didn't know where the others were.
>
> But there's no evidence of them approaching the trailer house in terms of the door or even that they were over there beating on his trailer on the back. There's no indications [sic] that anyone was trying to enter his home. And so based upon the pattern instructions and based upon the evidence at this state, I'm going to decline Instruction Q.

The district court also reviewed proposed instruction R and determined that the instruction was not appropriate because other instructions covered the issue and no competent evidence existed to support the instruction. The record reflects the following exchange between the court and defense counsel regarding proposed instruction R:

> THE COURT: Well, and I think Instruction 18 covers a situation that we're dealing with and that is, as reviewing the evidence in the light most favorable to Mr. Farmer, he was pulled over the fence . . ., and then he crawled under the car in an effort to protect himself. And while under the car, he then got a knife out and thought this was his chance, and stabbed the guy, and then went back into his home.
>
> I mean, he was pulled off of the fence. And as far as the protection of LeiLani

and others, it's already contained in the Instruction Number 17.

> [DEFENSE COUNSEL]: I would agree, your Honor. The only difference is the protection of the home. The initial episode that started all of this was an attack against the house. Him not—Mr. Farmer not knowing what was going on, went outside—armed himself, went outside for the protection of not only himself, LeiLani, and the home, but he didn't know who was out there and what they were doing. That's what started all of this episode, and that's why we've asked for it to begin with.
>
> THE COURT: All right.
>
> [DEFENSE COUNSEL]: I think that's different than what you stated in 18. I think 18 does discuss Mr. Farmer and others, but it doesn't talk about one's right to protect their home.
>
> THE COURT: Okay. And your objection is noted and the Court will decline to give the instruction for two reasons. One is the nature of the defense is, it is already, I believe, set forth in 17, 18, and I think even 19. And here's the other one, and which is more pertinent. When this altercation occurred, these people weren't beating on his trailer. They weren't beating on his door. There's no evidence to show that his defense was to protect his property from someone trying to ram it with a car or any other thing.
>
> And given the evidence that's been presented at this time, the Court does not feel that this—there is a factual basis to support this particular instruction. And so I'll decline to give it.

[¶ 25] Our review of the record supports the evidentiary findings of the district court. No evidence exists in the record which would support Mr. Farmer's theory of defense as reflected in instructions Q and R. It is undisputed that the stabbing of Mr. Goodhue did not take place on Mr. Farmer's property. The jury was appropriately instructed by instructions 16 through 20 concerning the theories of self-defense and the defense of others.[3] There was no evidence to support

---

3. Jury instructions 16 through 20 state:
Instruction No. 16

Before the defendant may be convicted of any crime, the State must prove beyond a

instructions regarding the defense of the home and the duty to retreat. Accordingly, we find no abuse of discretion in the trial court's refusal to give the proposed instructions.

## C. Prosecutorial Misconduct

[¶ 26] In his final claim of error, Mr. Farmer contends the prosecutor made several improper and prejudicial comments during closing arguments. Mr. Farmer made no objection to the State's closing argument at trial. As a result, our review is limited to an analysis under the plain error standard:

> "First, the record must be clear as to the incident which is alleged as error. Second, the party claiming the error amounted to plain error must demonstrate that a clear and unequivocal rule of law was violated. Finally, that party must prove a substan-

tial right has been denied him and, as a result, he has been materially prejudiced." *Wilks v. State*, 2002 WY 100, ¶ 7, 49 P.3d 975, 981 (Wyo.2002). Mr. Farmer bears the burden of proving prejudice. *Tennant v. State*, 786 P.2d 339, 346 (Wyo.1990). We measure the propriety of closing arguments in the context of the entire argument and compare them with the evidence produced at trial. *Wilks*, ¶ 26. We will only reverse a conviction for prosecutorial misconduct when we find that there was a substantial risk of a miscarriage of justice. *Hodgins v. State*, 962 P.2d 153, 157 (Wyo.1998). Furthermore, we note that "[p]lain error in closing argument must remain hard to find because otherwise the trial court becomes charged with an adversary responsibility to control argument even when objection is not taken by the opposing attorney." *Harper v. State*, 970 P.2d 400, 403 (Wyo.1998).

reasonable doubt that the defendant did not act in self-defense.

Instruction No. 17

It is lawful for a person who is being assaulted to defend himself from attack if he has reasonable grounds for believing and does believe that bodily injury is about to be inflicted upon him. In doing so he may use all force which would appear to a reasonable person, in the same or similar circumstances, to be necessary to prevent the injury which appears to be imminent.

Instruction No. 18

If the defendant had reasonable grounds to believe and actually did believe that he or another was in imminent danger of death or serious bodily harm from which the defendant could save himself or another only by using deadly force against the other person, the defendant had the right to use deadly force in self-defense of himself or defense of another. "Deadly force" means force which is likely to cause death or serious bodily harm.

The circumstances under which the defendant acted must have been such as to produce in the mind of a reasonably prudent person, similarly situated, the reasonable belief that the other person was about to kill the defendant or another or do serious bodily harm to the defendant or another. The danger must have been apparent, present and imminent or must have appeared to be so under the circumstances.

If the defendant believed that he or another was in imminent danger of death or serious bodily harm, and that deadly force was necessary to repel such danger, and if a reasonable person in a similar situation seeing and knowing the same facts would be justified in believing that he was in similar danger, the defen-

dant would be justified in using deadly force in self-defense of himself or defense of another. The defendant would be justified even though the appearance of danger later proved to be false and there was actually neither purpose on the part of the other person to kill the defendant or another or do the defendant or another serious bodily harm, nor imminent danger that it would be done, nor actual necessity that deadly force be used in self-defense of himself or defense of another. If the person so confronted acts in self-defense or defense of another upon such appearance of danger from honest belief, the right of self-defense of himself or defense of another is the same whether the danger is real or merely apparent.

Instruction No. 19

Generally, the right to use self-defense is not available to one who is the aggressor or provokes the conflict. However, if one who provokes a conflict thereafter withdraws from it in good faith and informs his adversary by words or actions that he wants to end the conflict, and he is thereafter attacked, he then has the same right of self-defense as any other person. This right of self-defense extends not only against the actual assailant, but also to those acting in concert with the assailant.

Instruction No. 20

One who has reasonable grounds to believe that another will attack him, and that the anticipated attack will be of such a character as to endanger his life or limb, or to cause him serious bodily harm, has a right to arm himself for the purpose of resisting such attack.

If the defendant armed himself in reasonable anticipation of such an attack, that fact alone does not make the defendant the aggressor or deprive the defendant of the right of self-defense.

[¶ 27] Mr. Farmer relies on three comments advanced by the State during its closing argument to support his contention of prosecutorial misconduct: (1) the amount of alcohol consumed by the victim and his companions was insufficient to make a difference in the perception of events they claim; (2) the statements made by various witnesses at trial are substantially similar to previous statements that were made after the event; and (3) the testimony of the witnesses was consistent to what happened that night. Mr. Farmer claims these statements demonstrate that the State impermissibly vouched for the credibility of its witnesses. Mr. Farmer relies on our holding in *Dysthe v. State*, 2003 WY 20, 63 P.3d 875 (Wyo.2003) to support his position.

[¶ 28] In *Dysthe*, the prosecutor made the following statements during closing arguments:

> "These witnesses, despite the fact that they are users, were credible. They were very credible. They were more credible because of the very fact that they have a relationship with this Defendant. More credible because, if you couldn't tell, I certainly could; they didn't like me asking them questions. They didn't want to be telling me anything."

*Id.*, ¶ 28. We found that the prosecutor's comments crossed the line between legitimate argument and illegitimate vouching for the credibility of the State's witnesses and we reversed. *Id.*, ¶ 33. Reversal is appropriate in situations where this line is crossed.

> "When the prosecutor asserts his credibility or personal belief, an additional factor is injected into the case. This additional factor is that counsel may be perceived by the jury as an authority whose opinion carries greater weight than their own opinion: that members of the jury might be persuaded not by the evidence, but rather by a perception that counsel's opinions are correct because of his position as prosecutor, an important state official entrusted with enforcing the criminal laws of a sovereign state. While the prosecutor is expected to be an advocate, he may not exploit

his position to induce a jury to disregard the evidence or misapply the law."

*Lane v. State*, 12 P.3d 1057, 1065 (Wyo.2000).

[¶ 29] Upon examination of the statements challenged by Mr. Farmer, we do not find that the prosecutor's comments were improper. Unlike the prosecutor's comments in *Dysthe*, the prosecutor did not reference his own beliefs nor did he specifically comment upon the credibility of the witnesses. We have previously noted that the State may assist the jury by reflecting upon the evidence and drawing reasonable inferences which logically flow from that evidence. *Armstrong v. State*, 826 P.2d 1106, 1116 (Wyo.1992). Placed in proper context, the prosecutor's statements are properly viewed as comments upon the evidence and nothing more. Accordingly, we find no error.

[¶ 30] Affirmed.